IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:17-CT-3162-FL

| NATHANIEL UPSHUR, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | ORDER |
|  | ) |  |
| NORTH CAROLINA PAROLE COMMISSION CHAIRMAN WILLIS J. FOWLER, | ) ) ) |  |
|  | ) |  |
| Defendant.[1] | ) |  |

This matter is before the court on the parties' cross motions for summary judgment (DE 33, 35, 42) pursuant to Federal Rule of Civil Procedure 56. The motions were fully briefed and the issues raised are ripe for decision. For the reasons that follow, the court grants defendant's motion for summary judgment, and denies plaintiff's motions.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing correspondence addressed to the court on June 26, 2017. Plaintiff filed the operative complaint on July 13, 2017, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendant, the chairman of the North Carolina Parole Commission, violated his rights under the

---

[1] Plaintiff's complaint named Paul G. Butler, the former chairman of the North Carolina Parole Commission, as defendant, and asserted claims against him in his official capacity. Defendant's counsel represents that Willis J. Fowler ("Fowler") has succeeded defendant Butler as the chairman of the Commission. (Answer (DE 22)). Federal Rule of Civil Procedure 25(d) provides that when a public officer is named as defendant in his official capacity, and the officer ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party. Accordingly, the court has constructively amended the case caption to reflect Fowler's substitution as the correct defendant in this action. The court will direct the clerk to so amend the caption on the docket.

Eighth and Fourteenth Amendments to the United States Constitution by failing to provide him with a meaningful opportunity to obtain release on parole. As relief, plaintiff seeks a court order either granting him parole or directing defendant to review him for parole release under the procedures set forth in the remedial plain entered in Hayden v Keller, No. 5:10-CT-3123-BO (E.D.N.C. Nov. 2, 2017) (DE 83, 96).

On May 24, 2018, the court entered case management order governing discovery and pretrial dispositive motions practice, and also appointed North Carolina Prisoner Legal Services, Inc. ("NCPLS") to represent plaintiff for the discovery phase of the case. The parties completed discovery on or about October 24, 2018. On October 30, 2018, the court granted NCPLS's motion to withdraw from representing plaintiff.

On November 15, 2018, plaintiff filed motion to appoint counsel. Plaintiff's motion also raised concerns about the sufficiency of defendant's discovery responses. On November 20, 2018, the court entered order denying the motion to appoint counsel, but giving plaintiff 14 days to file motion to compel additional discovery responses. Plaintiff filed response to the court's order on November 26, 2018, stating that he did not intend to seek additional discovery from defendant.

Also on November 26, 2018, plaintiff filed the instant motion for summary judgment, supported by a memorandum of law and plaintiff's declaration. On December 17, 2018, defendant filed the instant motion for summary judgment and incorporated opposition to plaintiff's motion for summary judgment. In support, defendant relies upon a memorandum of law, statement of material facts, and the following: 1) affidavit of Mary Stevens, administrator for the North Carolina Parole Commission; 2) records from plaintiff's state criminal proceedings; 3) North Carolina Parole Commission records concerning plaintiff; 4) North Carolina Department of Public Safety ("DPS")

2

proposed remedial plan, Hayden v. Keller, No. 5:10-CT-3123-BO (DE 83); 5) November 2, 2017, order, Hayden v. Keller, No. 5:10-CT-3123-BO (DE 96); and 6) March 19, 2018, order, Hayden v. Keller, No. 5:10-CT-3123-BO (DE 113).

Plaintiff filed response in opposition to defendant's motion for summary judgment and his second instant motion for summary judgment on January 18, 2019, supported by a memorandum of law, statement of material facts, and appendix. Plaintiff's appendix included his parole review records, and excerpts from the North Carolina Parole Commission's Standard Operations Manual. Defendant filed response in opposition on February 6, 2019, supported by opposition statement of material facts.

### STATEMENT OF THE FACTS

The undisputed facts and pertinent related litigation background to plaintiff's claims can be summarized as follows. In February 1988, plaintiff was sentenced to life imprisonment following state convictions for first degree rape, assault with a deadly weapon inflicting serious injury, and first degree murder. (Stevens Aff. (DE 38-1) ¶ 4). Plaintiff became eligible for parole on February 18, 2008. (Id. ¶ 14). Plaintiff received his first parole review in December 2007, and was reviewed again in March 2009, December 2011, December 2013, and December 2016. (Id. ¶¶ 15-16). The North Carolina Parole Commission denied parole release on each occasion. (Id. ¶¶ 15-17). Plaintiff's is scheduled for another parole review in December 2019. (Id. ¶ 16).

In July 2010, while plaintiff's parole reviews were ongoing, a North Carolina inmate instituted Hayden v. Keller, No. 5:10-CT-3123-BO, in this court. The Hayden plaintiff alleged North Carolina's parole review procedures denied juveniles sentenced as adults to life imprisonment with the possibility of parole a meaningful opportunity to obtain release based on demonstrated

3

maturity and rehabilitation. Hayden v. Keller, 134 F. Supp. 3d 1000, 1001 (E.D.N.C. 2015). On September 25, 2015, the Hayden court granted in part the plaintiff's motion for summary judgment, finding that North Carolina's parole procedures, as applied to juvenile offenders, violated the Eighth Amendment. Id. at 1011. The Hayden court also ordered the parties to submit a proposed remedial plan that ensures juvenile offenders convicted as adults in North Carolina are provided a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. Id.

The Hayden defendants appealed the September 25, 2015, order, and the court granted the defendants' motion to stay implementation of the order pending appeal. Hayden v. Keller, No. 5:10-CT-3123-BO (E.D.N.C. Nov. 13, 2015) (DE 65). On August 1, 2016, the United States Court of Appeals for the Fourth Circuit dismissed the appeal for lack of jurisdiction. Hayden v. Butler, 667 F. App'x 416 (4th Cir. 2016). On August 25, 2016, the Hayden court lifted the stay, and directed the parties to file proposed remedial plans within 60 days. Hayden v. Keller, No. 5:10-CT-3123-BO (E.D.N.C. Aug. 25, 2016) (DE 72). On November 2, 2017, the Hayden court granted the plaintiff's request for injunctive relief, adopted the defendants' proposed remedial plan, and directed defendants to implement the proposed plan within 90 days. Id. (Nov. 2, 2017) (DE 96). On March 19, 2018, the Hayden court granted the parties' joint motion for extension of time to implement the remedial plan, and ordered that the plan be implemented by July 28, 2018. Id. (Mar. 19, 2018) (DE 113).

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

4

56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily

5

be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.  Analysis

The court begins by clarifying the scope of relief available in this action. As noted, plaintiff seeks only injunctive relief. Plaintiff also filed his complaint against defendant in his official capacity, and thus plaintiff's claims are, in effect, against the State of North Carolina. Nivens v. Gilchrist, 444 F.3d 237, 249 (4th Cir. 2006). Absent a valid waiver, the Eleventh Amendment bars claims for compensatory or punitive damages against a State. See Eldelman v. Jordan, 415 U.S. 651, 662-63 (1974); see also Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995) (noting compensatory and punitive damages are "unavailable in official capacity suits"). Thus, plaintiff may only obtain prospective injunctive relief in this action.

Having clarified the relief available to plaintiff, the court turns to whether Hayden moots plaintiff's request for injunctive relief. The court has an independent obligation to determine whether it retains jurisdiction when subsequent events potentially moot the claims: "Because a federal court's subject-matter jurisdiction is created—and limited—by Article III and federal statutes, no action of the parties can confer subject-matter jurisdiction upon a federal court . . . . A federal court has an independent obligation to assess its subject-matter jurisdiction, and it will raise a lack of subject-matter jurisdiction on its own motion." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005) (quotation omitted).

Federal courts may only decide actual cases or controversies. See U.S. Const. art. III, § 2.

A "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). "The requisite personal interest that must exist at the commencement of the litigation . . . must continue throughout its existence . . . ." United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) (quotation omitted). To satisfy the Article III case or controversy requirement, "a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70-71 (1983). When a case or controversy ceases to exist, the litigation becomes moot and the federal court no longer possesses jurisdiction to proceed. Id.

A case, however, is not necessarily mooted by a defendant's voluntary cessation of allegedly offensive conduct. United States v. Jones, 136 F.3d 342, 348 (4th Cir. 1998) (noting "voluntary discontinuance of challenged activities by a defendant does not necessarily moot a lawsuit"). Rather, the standard for determining whether a case has been mooted by a defendant's voluntary conduct is stringent: "A case might become moot if subsequent events [make] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (quotation omitted).

Plaintiff primarily requests that the court order defendant to conduct a new parole review hearing under the remedial plan ordered in Hayden. Plaintiff reasons that his December 2016 parole review was conducted under pre-Hayden procedures, and thus violated his rights under the Eighth and Fourteenth Amendments. Plaintiff therefore requests a new parole hearing within 45 days of the court's order resolving his motion for summary judgment.

Plaintiff's claim is plainly mooted by Hayden. In Hayden, the North Carolina Parole Commission agreed to a remedial plan that provides plaintiff with a meaningful opportunity obtain

7

release based on demonstrated maturity and rehabilitation. Hayden v. Keller, No. 5:10-CT-3123-BO (E.D.N.C. Nov. 2, 2017) (DE 96). Under the plan, plaintiff will receive notice of the parole review date, and may submit information to the Commission to demonstrate his maturity, rehabilitation, and suitability for parole. (Stevens Aff. (DE 38-1) ¶¶ 22-23). Plaintiff also may request an in-person video-conference hearing with a Commissioner or a public meeting with the Commissioner. (Id. ¶ 23). If granted a video-conference hearing, plaintiff will be afforded a 30-minute recorded hearing, in which he may present his own statement and answer questions from the presiding Commissioner. (Id. ¶ 25). Following the effective date of the remedial plan, plaintiff will receive parole review every two years. (Id. ¶ 28).

Plaintiff does not dispute that these procedures provide him a meaningful opportunity to present his case for parole release. Indeed, the principal relief plaintiff seeks is a parole review proceeding conducted pursuant to the procedures set forth in the Hayden remedial plan. As discussed above, the Hayden court already ordered defendant to provide plaintiff with those procedures. Accordingly, Hayden moots plaintiff's claim because defendant is already under a court order to provide plaintiff with the parole review procedures he seeks in this action. See Church of Scientology v. United States, 506 U.S. 9, 12 (1992) (noting a case becomes moot when "an event occurs while a case is pending . . . that makes it impossible for the court to grant any effectual relief whatever to a prevailing party"). For the same reasons, plaintiff does not qualify for the voluntary cessation exception to the mootness doctrine – the Hayden order is a subsequent event that makes it "absolutely clear" that defendant will provide the procedures set forth in the remedial plan. See Friends of the Earth, 528 U.S. at 189.

To the extent plaintiff requests that defendant provide a Hayden parole review prior to his

currently-scheduled December 2019 review, the court declines to order such relief. As set forth above, defendant was not required to implement the Hayden remedial plan until July 28, 2018, and plaintiff's scheduled December 2019 review therefore will take place within the two-year window mandated by the plan.

Plaintiff's complaint also requests a court order directing defendant to place him on parole. The Constitution does not require a State "to guarantee eventual freedom to a juvenile convicted of a nonhomicide crime." Graham v. Florida, 560 U.S. 48, 75 (2010); see also Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979); Bowling v. Director, Va. Dep't of Corr., 920 F.3d 192, 197 (4th Cir. 2019); cf. Hawkins v. Freeman, 195 F.3d 732, 747 (4th Cir. 1999) (suggesting Fourteenth Amendment does not guarantee parole release as a matter of substantive due process). Under North Carolina law, the Parole Commission has "the exclusive discretionary authority to grant or deny parole." Hayden, 134 F. Supp. 3d at 1006 (citing N.C. Gen. Stat. § 143B-720 (2014); N.C. Gen. Stat. § 15A-1371(d) (2014)). Accordingly, the court lacks authority to direct defendant to release plaintiff on parole.[2]

Finally, the court notes that plaintiff's complaint raised additional allegations concerning his parole review procedures, which he has now abandoned. For example, plaintiff alleged defendant relied on an inaccurate and inflammatory description of his crime when denying plaintiff parole, and that additional records in his parole review file are inaccurate. (See, e.g., Compl. (DE 4) § V). Plaintiff expressly abandoned these claims in his second motion for summary judgment. (See DE 42-1 at 4). But even if these allegations remained part of this action, it would not change the court's determination that plaintiff's request for injunctive relief is moot.

---

[2] Moreover, the court cannot order immediate or speedier for release from confinement in a § 1983 civil rights action. See Wilkinson v. Dotson, 544 U.S. 74, 81 (2005).

**CONCLUSION**

Based on the foregoing, the court GRANTS defendant's motion for summary judgment (DE 35), and denies plaintiff's motions for summary judgment (DE 33, 42). The clerk is DIRECTED to close this case, and to amend the caption to as set forth above in footnote one.

SO ORDERED, this the 24th day of September, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge